**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** ***as assignee and subrogee of agent of*** **FLORIDA BC HOLDINGS, LLC** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:21-cv-308 (MTT)** |
| **RAYMOND DANE WOODARD,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Defendant Raymond Dane Woodard moves to dismiss Plaintiff Travelers Casualty and Surety Company of America's ("Travelers") complaint for lack of jurisdiction. Doc. 17. Additionally, Woodard moves for summary judgment. Doc. 18. For the reasons that follow, Woodard's motions (Docs. 17; 18) are **DENIED**.

**I. BACKGROUND**[1]

Woodard was previously employed as a branch manager for Florida BC Holdings, LLC d/b/a Synergy Equipment ("Synergy"), a construction rental company. Docs. 18-1 ¶ 1; 19-2 ¶ 1. Synergy terminated Woodard's employment in April 2020 based on allegations that Woodard misappropriated funds. Docs. 19-3 ¶ 23; 19-5 at

[1] These facts are drawn primarily from Travelers' Statement of Material Facts which Woodard failed to contest, but only insofar as Travelers' facts are adequately supported by specific citations to the record. *See* Fed. R. Civ. P. 56(e)(2) and (3); M.D. Ga. Local Rule 56.

42:6-15. Synergy submitted a claim to its insurer, Travelers, to recover the funds Woodard purportedly stole. Docs. 19-3 ¶ 28; 19-6. Travelers paid Synergy's claim and Synergy assigned Travelers its right to recover from Woodard. Docs. 19-3 ¶ 31; 19-4. Travelers sent letters to Woodard demanding repayment. Docs. 19-3 ¶ 32; 19-10 at 2-4. Woodard has not repaid the allegedly stolen sums. Docs. 19-5 at 37:19-22; 19-7 at 69:14-23.

The alleged theft centers on Woodard's authority to offer discounts and "no charges" (i.e., free equipment rentals) to customers. As branch manager, Woodard was authorized to provide customers with discounted or complimentary equipment rentals. Docs. 19-3 ¶ 7; 19-5 at 18:2-5. But discounts and no charges below the "manager floor" required approval, in the form of a "unique discount code," from Synergy's upper management. Docs. 19-3 ¶¶ 8-10; 19-5 at 18:2-20:20.

Travelers contends that Woodard went beyond his managerial discretion when he offered 31 customers no charges without obtaining approval by upper management. Doc. 19-3 ¶ 13. Justin Winkler, Synergy's director of operations and the employee who uncovered Woodard's alleged theft, testified that while branch managers could offer customers a few free days at the end of a rental period, this discretion was limited to specific circumstances. Doc. 19-5 at 19:3-20:23. For example, branch managers have discretion to no charge customers if "the machine [is] broken down" or "it's a rain day[.]" *Id*. But no charging entire contracts required approval from upper management. *Id*. Additionally, Synergy did not give branch managers the discretion to accept services or personal payments in exchange for free equipment rentals. *Id*. at 24:5-21, 34:24-35:6, 35:20-36:17.

Travelers offers evidence that Woodard was aware of these policies and that Woodard circumvented these policies by bartering and accepting personal payments in exchange for free equipment rentals. *Id*. at 18:2-21:9, 24:18-25, 35:20-36:17. For example, Woodard "bypass[ed]" the approval system by opening rental contracts for the full rental amount and then crediting customers for free rental days at the close of the contract. *Id*. at 23:15-24:8.

Further, Woodard admits that he accepted cash and checks for personal use in exchange for providing customers with free rentals. Doc. 19-7 at 35:15-18, 92:10-20. In fact, Woodard plead guilty to criminal theft charges. Doc. 19-8. Travelers contends that Woodard's unauthorized no charges resulted in over $300,000 in lost revenue and other damages. Docs. 18-1 ¶ 3; 19-2 ¶ 3.

Woodard argues that he had the authority to no charge customers, even though it was "wrong" to accept personal payment in exchange for free rentals. Docs. 18-1 ¶ 4; 19-7 at 92:10-20. Specifically, he states that Jeff Karter, the Chief Operating Officer of Synergy, said no charges were within the discretion of managers. Doc. 18-1 ¶ 11. And that it was common practice in the industry to no charge customers. Doc. 19-7 at 68:23-69:2. Travelers maintains that while managers have some discretion to provide customers with discounts and no charges, Woodard went beyond his managerial discretion when he accepted services and personal payments in exchange for free equipment rentals. Docs. 19-2 ¶ 11; 19-5 at 18:2-20:23, 24:18-25, 35:20-36:17.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* at 1438 (quoting *Celotex*, 477 U.S. at 324) (alterations in original). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed

fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge … [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### A. Motion to Dismiss

An action based on diversity jurisdiction requires complete diversity between the parties and an amount in controversy exceeding $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir.2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Generally, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289. The party seeking to invoke federal diversity jurisdiction under 28 U.S.C. § 1332 bears the burden of proving the claim meets the threshold jurisdictional amount of $75,000 by a preponderance of the evidence. *Federated Mut. Ins. Co.*, 329 F.3d at 807. And "a district court need not suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) (internal quotations and alterations omitted).

Woodard contends that the Court does not have subject matter jurisdiction because Travelers has not satisfied the amount in controversy requirement. Doc. 17 at 5.[2] Although Travelers alleges $361,023.55 in damages, Woodard takes issue with Travelers' method for calculating damages. *Id*.; Doc. 1 ¶ 7.

Woodard allegedly rented dozens of pieces of equipment worth thousands of dollars to 31 customers without charging them. Docs. 1 ¶ 7; 19-5 34:24-35:6. Travelers supports its calculation of damages with a proof of loss statement and deposition testimony from Winkler. Docs. 19-5 at 39:15-17; 19-6. The proof of loss statement includes an itemized list of customers Woodard provided unauthorized no charges to and the amount Synergy contends was lost in revenue as a result of the no charges. Doc. 19-6 at 2-4. Further, Winkler, who was responsible for creating the proof of loss statement, testified that based on his calculation Synergy lost over $300,000 as a result of Woodard's alleged theft. Doc. 19-5 at 31:6-33:19, 39:15-17. Travelers' evidence is more than enough to support its allegation that the amount in controversy exceeds $75,000.[3] Accordingly, the Court has subject matter jurisdiction and Woodard's motion to dismiss (Doc. 17) is **DENIED**.

---

[2] Woodard does not dispute that the parties are citizens of different states.

[3] Woodard argues that other evidence, such as a police report from Synergy claiming only $10,000 in stolen funds, proves that Travelers' claim is for less than $75,000. Doc. 17 at 5. But this evidence does not demonstrate "to a legal certainty" that Travelers' claim is for less than the jurisdictional amount. *St. Paul Mercury Indem. Co.*, 303 U.S. at 289. In fact, the police report clarifies that Synergy believed Woodard misappropriated almost $342,000 in funds but at the time of the incident report Synergy could only prove that he stole between $10,000 to $20,000. Doc. 18-3 at 2. Travelers has since gathered information to support its allegation that Woodard misappropriated over $300,000. Doc. 19-6.

**B. Motion for Summary Judgment**

*1. Travelers has Presented Evidence that Woodard did not have the Authority to Offer the Disputed No Charges*

Woodard argues that he had the authority to offer the disputed no charges. Doc. 18-2 at 8-10, 12-14. Woodard states that Synergy "condoned, accepted, and ratified" his conduct because he had managerial "discretion" to no charge customers. *Id*. at 10-14. Similarly, Woodard contends that Travelers did not offer evidence to support its claims for fraud, conversion, breach of fiduciary duty, and unjust enrichment because Woodard "had legal authority as Branch manager to no charge customers." *Id*. at 8-10.

Travelers has presented evidence supporting its contention that Woodard went beyond his managerial discretion when he no charged customers without approval from upper management. Doc. 19-5 at 23:15-24:8, 31:6-33:19, 34:24-35:6. And Woodard admits that in exchange for providing free rentals, some customers gave him cash or checks that he kept for his own personal benefit. Doc. 19-7 at 35:15-18, 92:10-20. Therefore, at the very least, there is a genuine issue of material fact as to whether Woodard was authorized to provide customers with the disputed no charges.

*2. Travelers has Presented Evidence to Support its Claims*

**a. Conversion**

"In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Cap. Fin. Servs. Grp., Inc. v. Hummel*, 313 Ga. App. 278, 280-81, 721 S.E.2d 108, 110 (2011) (citation omitted). Woodard argues that Travelers cannot prove

he had actual possession of the money allegedly stolen and that he did not refuse the demand for the return of the property but rather sought out legal counsel. Doc. 18-2 at 8. Travelers has offered evidence that Woodard personally accepted cash and checks from customers in exchange for free equipment rentals, demonstrating that Woodard had actual possession of the money allegedly stolen. Doc. 19-7 at 38:2-10, 92:10-20. And Travelers provides evidence that it sent letters to Woodard demanding repayment and Woodard has failed to make any payment to Synergy or Travelers. Docs. 19-10 at 2-4; 19-5 at 37:19-22; 19-7 at 69:14-23. Thus, Travelers has provided evidence to support the elements of its conversion claim.

**b. Breach of Fiduciary Duty and Unjust Enrichment**

"[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Bedsole v. Action Outdoor Advert. JV, LLC*, 325 Ga. App. 194, 201, 750 S.E.2d 445, 452 (2013) (cleaned up). Unjust enrichment occurs when "(1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309 (N.D. Ga. 2012) (citing *Smith Serv. Oil Co. v. Parker*, 250 Ga. App. 270, 271, 549 S.E.2d 485, 487 (2001)). Woodard argues that Travelers' breach of fiduciary duty and unjust enrichment claims fail because Synergy did not suffer damages as a result of Woodard's actions. Doc. 18-2 at 9-10. But Travelers provides evidence that Woodard's unauthorized no charges resulted in over $300,000 in damages. Docs. 19-5 at 24:5-17; 19-6 at 4. Even if Synergy received some benefit from Woodard's actions, such as increased customer loyalty—although Woodard did

not present any evidence to support this assertion—at the very least, there is a genuine issue of material fact as to whether Synergy lost revenue when Woodard provided customers with unauthorized free rentals. Docs. 18-2 at 9; 19-5 at 24:5-17.

**c. Money Had and Received**

"In order to sustain an action for money had and received, a party must show, in addition to showing that an entity has received money justly belonging to another, that it made a demand for payment and was refused." *City of Atlanta v. Hotels.com*, 289 Ga. 323, 328, 710 S.E.2d 766, 770 (2011). Woodard argues that Travelers' claim fails because "it has not been proven that the theft was caused by the Defendant[.]"[4] Doc. 18-2 at 10. But as discussed further below, Travelers offers evidence to support its contention that Woodard was responsible for the alleged theft.

*3. Travelers is not Barred from Recovery*

First, Woodard argues that Travelers is barred from recovery because the alleged theft could have resulted from the actions of third parties. Doc. 18-2 at 18-19. For example, Woodard contends that "anyone with access to a computer at Synergy would be able to apply no charges when closing a contract." *Id*. at 19. But Travelers has presented evidence that Woodard, not some unnamed third party, was responsible for the alleged theft. Woodard admits that he took personal payments from customers in exchange for offering no charges. Doc. 19-7 at 35:15-18, 92:10-20. And Woodard stated that it was his responsibility as branch manager to review all the contract invoices. *Id*. at 95:2-8. These facts could lead a jury to conclude that Woodard was

[4] Woodard also argues that he did not refuse the demand for return of the property but sought out legal counsel. Doc. 18-2 at 10. This argument fails for the reasons stated above.

responsible for the alleged theft and Woodard has not offered any evidence to the contrary.

Second, Woodard argues that Travelers is barred from recovery because Synergy's insurance policy with Travelers is ambiguous so "the loss should not have been covered" and Woodard is not liable to Travelers for any damages incurred. Doc. 18-2 at 17. But Woodard has not offered any authority supporting his argument that Travelers' improper coverage should somehow absolve him from repaying the sums he allegedly stole from Synergy. It is undisputed that Travelers paid Synergy's insurance claim and that Synergy assigned Travelers its right to recovery. Doc. 19-4 at 2. Thus, Travelers has direct claims against Woodard.

Third, Woodard argues that Travelers is barred from recovery because Woodard was required to get approval from upper management to give discounts and no charges. Doc. 18-2 at 19. Thus, Woodard contends the actions of upper management are intervening acts preventing Travelers from recovering. *Id*. While Woodard was required to get approval from upper management to give discounts and no charges beyond his managerial discretion, Travelers has presented evidence that Woodard bypassed the official approval system. Doc. 19-5 at 18:2-19:7, 23:15-24:8. Therefore, Travelers has evidence that upper management did not approve the disputed no charges and the actions of upper management are not "intervening act[s]" that would relieve Woodard from liability. Doc. 18-2 at 19.

## IV. CONCLUSION

Travelers has presented sufficient evidence to support its good faith allegation that the amount in controversy exceeds $75,000. Further, issues of fact remain

regarding whether Woodard was authorized to provide customers with the alleged no charges. Accordingly, Woodard's motion to dismiss (Doc. 17) and motion for summary judgment (Doc. 18) are **DENIED**.

**SO ORDERED**, this 17th day of November, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT